UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| SHAWN SAYER, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2:11-cr-00113-DBH |
| | ) | 2:14-cv-00505-DBH |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent | ) | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 AND 18 U.S.C. § 3582 MOTION

In this action, Petitioner Shawn Sayer moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence, and he also moves for a sentence modification, pursuant to 18 U.S.C. § 3582(c).  (Motion, ECF No. 169.)[1]

Following his entry of a conditional plea of guilty, Petitioner was convicted of cyberstalking pursuant to 18 U.S.C. § 2261A(2), and he was sentenced to the statutory maximum term of 60 months of imprisonment, followed by three years of supervised release.  (Plea Tr., ECF No. 197 at 18-19; Judgment, ECF No. 139 at 1-3.)  Petitioner appealed from his conviction and sentence.  On appeal, Petitioner challenged the constitutionality of the cyberstalking statute and argued that his sentence above the guidelines range was unreasonable; the First Circuit affirmed both the conviction and the sentence.  *United States v. Sayer*, 748 F.3d 425, 427 (1st Cir. 2014).

---

[1] Although this recommended decision discusses Petitioner's 28 U.S.C. §2255 claims and his 18 U.S.C. § 3582 argument as separate motions, Petitioner asserted his section 3582 argument in a motion to supplement his section 2255 motion rather than as a separate motion, and the Court granted his motion to supplement.  (Motion, ECF No. 169; Motion to Supplement, ECF No. 173; Order, ECF No. 177.)  For that reason, the two are addressed together in this recommended decision.

Petitioner filed a timely section 2255 motion in November 2014.[2]  He claims ineffective assistance of counsel based on the conduct of the three attorneys who represented him successively during discovery, his plea hearing and sentencing, and his direct appeal.[3]  Petitioner's ineffective assistance claims focus on (1) counsel's decision to address 18 U.S.C. § 2265A, which doubles the penalty for a cyberstalking offense under 18 U.S.C. § 2261A when the offender has a prior conviction for a stalking or domestic violence offense, at sentencing rather than at the plea stage of the case; (2) counsel's pretrial investigation, particularly of (a) Petitioner's mental state, (b) alleged threats directed at Petitioner by the victim's friends, (c) the Government's shutdown of certain Internet accounts, and (d) a consent defense based on the victim's past sexual history; (3) counsel's alleged lack of contact with Petitioner; (4) counsel's alleged sentencing predictions and promises; (5) counsel's advice that Petitioner not deny that he created "dozens of" profiles of the victim, when Petitioner contends that he wanted to admit that he only created two such profiles; (6) counsel's failure adequately to address at sentencing the Government's introduction of Petitioner's cellmate's statements; and (7) counsel's failure to obtain a psychological evaluation of Petitioner for pre-trial and sentencing purposes.

Petitioner also asserts two additional section 2255 claims: (1) a claim, previously asserted in Petitioner's direct appeal, based on an allegation that the Government failed to provide adequate notice, before the sentencing hearing, that it would rely on the statements of Petitioner's cellmate; and (2) a procedurally defaulted claim that Petitioner's plea was involuntary because he had insufficient time to consider the plea, and because he was uncertain as to whether his penalty would

---

[2] Petitioner asserts that he placed his motion in the prison mail system on November 20, 2014, and the motion was filed on November 24, 2014.  (Motion, ECF No. 169 at 1, 14.)  The Government concedes that the motion was filed timely.  (Response, ECF No. 201 at 1.)

[3] As explained below, there was a period of less than three weeks, in late October and early November 2011, when Petitioner was represented by an additional counsel.  It appears that none of Petitioner's section 2255 claims relates to the counsel who served during that brief period.

be doubled under 18 U.S.C. § 2265A.  Finally, Petitioner moves, pursuant to 18 U.S.C. §3582(c), for a sentence modification based on an amendment to U.S.S.G. § 5G1.3.

The Government has moved for summary dismissal of Petitioner's section 2255 motion and moves to dismiss his section 3582 motion.  (Response, ECF No. 201.)  After a review of Petitioner's motion, the Government's request for dismissal, and the record, I recommend that the Court grant the Government's request, and dismiss both of Petitioner's motions.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In May 2011, Petitioner was charged by complaint with cyberstalking, in violation of 18 U.S.C. §§ 2261A(2)(A) and 2261(b)(5),[4] a woman who was in Louisiana for several months in

---

[4] The complaint alleged that Petitioner had violated 18 U.S.C. §§ 2261A(2)(A) and 2261(b)(5).  (Complaint, ECF No. 1 at 1.)

At the time of Petitioner's offense, 18 U.S.C. § 2261A(2)(A) stated in pertinent part that

[w]hoever . . . with the intent . . . to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another State . . . uses the mail, any interactive computer service, or any facility of interstate or foreign commerce to engage in a course of conduct that causes substantial emotional distress to that person or places that person in reasonable fear of the death of, or serious bodily injury to, [that person] shall be punished as provided in section 2261(b) of this title.

Title 18 U.S.C. §2261A has since been amended, but not in any way that affects Petitioner's section 2255 motion.  *See* Pub. L. 113-4, § 107(b), 127 Stat. 54 (2013).

Title 18 U.S.C. § 2261(b)(5) provides for a term of imprisonment of not more than five years for a violation of section 2261A.  Pursuant to 18 U.S.C. §2265A, the penalty may be doubled for repeat offenders.  At the time of Petitioner's offense, section 2265A stated:

(a)     **Maximum term of imprisonment.** —The maximum term of imprisonment for a violation of this chapter after a prior domestic violence or stalking offense shall be twice the term otherwise provided under this chapter.

(b)     **Definition.** —For purposes of this section—

(1)  the term "prior domestic violence or stalking offense" means a conviction for an offense—

(A)  under section 2261, 2261A, or 2262 of this chapter; or

(B)  under State law for an offense consisting of conduct that would have been an offense under a section referred to in subparagraph (A) if the conduct had occurred within the special maritime and territorial jurisdiction of the United States, or in interstate or foreign commerce; and

3

2009. (Complaint, ECF No. 1 at 1.)  Counsel was appointed at Petitioner's initial appearance. (ECF No. 8.)

In July 2011, Petitioner was indicted on two counts, one of which was for cyberstalking, 18 U.S.C. § 2261A(2)(B), 2261(b)(5), and 2265A (Count I); the other count alleged identity theft, 18 U.S.C. § 1028(a)(7), 1028(b)(2)(B) (Count II).[5]  (Indictment, ECF No. 18.)  Petitioner pled not guilty at his arraignment.  (Minute Entry, ECF No. 24.)

In October 2011, counsel moved to withdraw.  (Motion to Withdraw, ECF No. 46.)  The Court granted the motion to withdraw and appointed new counsel.  (Minute Entry, ECF No. 49; Order, ECF No. 50.)  In November 2011, newly appointed counsel, who had served for less than three weeks, successfully moved to withdraw because Petitioner had retained counsel.  (Notice of Appearance, ECF No. 53; Motion to Withdraw, ECF No. 54; Order, ECF No. 55.)

In November 2011, Petitioner filed a motion to re-open the detention hearing (Motion to Re-open Detention Hearing, ECF No. 56); in January 2012, Petitioner filed a motion to suppress. (Motion to Suppress, ECF No. 65); and in February 2012, Petitioner filed a motion to dismiss Count I of the indictment (Motion to Dismiss, ECF No. 80).

After a detention hearing in April 2012, the Court ordered Petitioner detained pending trial. (Minute Entry, ECF No. 95; Order, ECF No. 115.)  In May 2012, the Court denied Petitioner's

---

(2) the term "State" means a State of the United States, the District of Columbia, or any commonwealth, territory, or possession of the United States.

Title 18 U.S.C. §2265A(b)(1)(B) has since been amended, but not in any way that affects Petitioner's section 2255 motion.  *See* Pub. L. 113-4, § 906(c), 127 Stat. 54 (2013).

[5] The Court resolved a citation error in the indictment regarding Count I for cyberstalking.  The complaint had correctly alleged a violation of 18 U.S.C. § 2261A(2)(A), whereas the indictment erroneously cited 18 U.S.C. § 2261A(2)(B). This Court addressed the error in its decision on Petitioner's motion to dismiss Count I of the indictment; the Court concluded that Petitioner did not appear to be moving to dismiss on that ground, but in any event, Petitioner was not misled or prejudiced by the error, and therefore the error did not render the indictment insufficient under Fed. R. Crim. P. 7(c)(2).  (Decision and Order, ECF No. 108 at 23.)

motion to dismiss Count I of the indictment.  (Decision and Order, ECF No. 108 at 3, 6, 24.)  Subsequently, following a partial evidentiary hearing on the issue of whether Petitioner was in custody when he was questioned, the Court denied the motion to suppress.  (Decision and Order, ECF No. 110 at 1.)

In August 2012, Petitioner entered into a plea agreement, and, at a plea hearing, the Court accepted Petitioner's conditional plea of guilty as to Count I for cyberstalking.  (Plea Agreement, ECF No. 120; Conditional Plea, ECF No. 122; Minute Entry, ECF No. 123; Plea Tr., ECF No. 197 at 19.)  The Court dismissed the charge of identity theft (Count II) on the Government's motion.  (Judgment, ECF No. 139 at 1.)

In his sentencing memorandum, Petitioner requested a sentence of 15 months.  (Petitioner's Sentencing Memorandum, ECF No. 130 at 10-14.)  The Government requested a sentence of 78 months.  (Government's Sentencing Memorandum, ECF No. 131 at 1.)

At sentencing, the Court found the sentencing facts as set forth in the revised presentence investigation report (Sentencing Tr., ECF No. 150 at 64) and determined that the base offense level was 18.  (*Id.*)  Because Petitioner had violated a court protection order and engaged in a long-term pattern of stalking, threatening, and harassing behavior, pursuant to U.S.S.G. § 2A6.2(b)(1), the Court added four levels. (*Id.*)  Pursuant to U.S.S.G. § 3E1.1, the Court subtracted three levels for acceptance of responsibility.  (*Id.*)  The Court thus found a total offense level of 19.  (*Id.*)  The Court determined that the criminal history was category III, which, when combined with a total offense level of 19, yielded a guideline range of 37 to 46 months.  (*Id.* at 66.)

Because the two state court convictions that the Government presented as predicate convictions did not qualify as predicate convictions under section 2265A, the Court concluded that Petitioner was not subject to a double penalty under 18 U.S.C. §2265A.  The convictions did not

qualify because the elements of those crimes, as stated in the charging instruments in both cases, did not match the elements of the federal statutes for those crimes.  (*Id.* at 66-69.)  The Court concluded that because section 2265A did not apply, pursuant to 18 U.S.C. § 2261(b)(5), the statutory maximum term of imprisonment was five years. (*Id.* at 69.)

The Court ultimately determined that an upward deviation from the guidelines range of 37 to 46 months to the statutory maximum sentence of five years was appropriate.  In support of this conclusion, the Court cited, "the use of anonymous third parties to harass the victim and the extra danger that that caused; the extra fear that was caused to the victim" by the use of third parties; the effect of posting the victim's identity, address, and intimate details on the internet; Petitioner's many encounters with law enforcement and the lack of effect the encounters had on Petitioner; Petitioner's on-going obsession with the victim, which obsession was demonstrated by Petitioner's communications with his cell-mate; the need to protect the public; the seriousness of the offense; the need for a just punishment; and the need for respect for the law.  (*Id.* at 71-73.)

Petitioner appealed from this Court's denial of his motion to dismiss and from the sentence. New counsel was appointed to represent Petitioner in the appeal.  (*United States v. Sayer*, No. 12-2489 (1st Cir. Jan. 7, 2013)).   The First Circuit affirmed in May 2014.  *Sayer*, 748 F.3d at 427. The First Circuit rejected Petitioner's as-applied First Amendment challenge, reasoning that Petitioner's conduct, to the extent it involved speech, was not protected by the First Amendment because the conduct was criminal.  *Id.* at 433-34 ("Speech integral to criminal conduct is now recognized as a 'long-established category of unprotected speech.'") (quoting *United States v. Stevens*, 559 U.S. 460, 471 (2010)).  The Court also concluded that the section 2261A(2)(A) is not unconstitutionally overbroad, and that Petitioner waived his argument that the statute is void for vagueness.  *Id.* at 435-36.

6

The First Circuit rejected Petitioner's contention that this Court should have deviated downward from the sentencing guidelines under U.S.S.G. § 5K2.23, which permits a reduction to account for time served on prior convictions, provided certain conditions are met. *Id.* at 436. The First Circuit concluded that this Court did not abuse its discretion when it varied upward from the guidelines range. *Id.* at 437. Finally, the First Circuit determined that Petitioner's argument that he had no notice that the cellmate's statements would be introduced at sentencing lacked credibility, and the Circuit concluded that this Court did not abuse its discretion in relying on the cellmate's testimony at sentencing. *Id.* at 437-38.

Petitioner filed a section 2255 motion in November 2014, and, following the Government's response, Petitioner filed a reply. (Response, ECF No. 201; Reply, ECF No. 202.)[6] In December 2014, Petitioner filed a motion to supplement his section 2255 motion. (Motion to Supplement, ECF No. 173.) Petitioner argues in the motion to supplement that an amendment to U.S.S.G. § 5G1.3 should be applied to give him credit for pretrial time in custody. (*Id.* at 1-2.)

## II.   DISCUSSION

### A.  Legal Standard for Claims of Ineffective Assistance of Counsel

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; and (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).[7] To

---

[6] In his reply, Petitioner contests a number of the Government's assertions, including the date of termination of Petitioner's relationship with the victim, the length of a state court sentence imposed in a criminal matter that had been under deferred disposition, and the duration of another state court sentence. (Reply, ECF No. 202 at 1-2.)

[7] Title 28 U.S.C. § 2255(a) states:

the extent that Petitioner alleges ineffective assistance of counsel, his right to counsel is guaranteed by the Sixth Amendment, and, therefore, Petitioner argues that the sentence was imposed in violation of "the Constitution or laws of the United States."

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v Carrier*, 477 U.S. 478, 485, 496 (1986) (citation omitted)).

A section 2255 petitioner has the burden to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). "[A] habeas petitioner is not automatically entitled to a hearing and normally should not receive one if his allegations are 'vague, conclusory, or palpably incredible.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). The Court "is at liberty to employ the knowledge gleaned during previous proceedings and make findings thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

On a claim of ineffective assistance of counsel, a petitioner "must establish both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *see also Hill v. Lockhart*, 474 U.S. 52, 59

---

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

(1985) (holding that "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").  The two prongs of the ineffective assistance test are commonly referred to as the "cause" and "actual prejudice" tests.  *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011).  The "cause" test is "a 'fairly tolerant' one because 'the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense.'"  *Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994)).  The issue is whether counsel's performance was "'within the wide range of reasonable professional assistance' that a competent criminal defense counsel could provide under 'prevailing professional norms.'"  *Bucci*, 662 F.3d at 30 (quoting *Strickland*, 446 U.S. at 688-89).  "Defense counsel is allowed to make strategic decisions, within the wide bounds of professional competence, as to which leads to follow up, and on which areas to focus his energies."  *Phoenix v. Matesanz*, 233 F.3d 77, 84 (1st Cir. 2000).

In reviewing claims of ineffective assistance of counsel, courts should be mindful that "'[c]ounsel is not required to waste the court's time with futile or frivolous motions.'"  *United States v. Hart*, 933 F.2d 80, 83 (1st Cir. 1991) (quoting *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978)); *see Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002) ("Since [the petitioner's] claims fail on the merits, his related claims that counsel rendered ineffective assistance in failing to press the claims at trial or on appeal must also fail.")

A district court that reviews claims of ineffective assistance of counsel is not required to address both prongs of the test, because a failure to meet either prong will undermine the claim.  *Strickland*, 466 U.S. at 697.  "Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is

warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954). *See David*, 134 F.3d at 478 ("To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings.").

### B.  Section 2255 Claims and Analysis

#### 1.  Claims regarding 18 U.S.C. § 2265A

Petitioner includes several claims regarding 18 U.S.C. § 2265A, which doubles the term of imprisonment for persons convicted of repeated domestic violence offenses or stalking offenses.

First, Petitioner contends that counsel was ineffective because she talked with the Government about whether the Government would indict Petitioner for a violation of 18 U.S.C. § 2265A. (Motion, ECF No. 169 at 15-16; Reply, ECF No. 202 at 4.) Petitioner argues that had counsel not raised the issue with the Government, the Government would not have indicted Petitioner under the penalty provision of section 2265A. (Motion at 15-16.)[8] Petitioner alleges that if his sentencing exposure were five years rather than ten, he would have opted to go to trial. (Motion at 31.)

Petitioner's argument lacks merit. A prosecutor has broad discretion when making a charging decision. As the First Circuit has noted:

> [A] prosecutor's ability to affect sentencing "[is] similar to the discretion a prosecutor exercises when he decides what, if any, charges to bring against a criminal suspect. Such discretion is an integral feature of the criminal justice system, and is appropriate, so long as it is not based on improper factors."

---

[8] Petitioner asserts that he made this argument in October 2011, at a hearing on a motion to withdraw. (Motion, ECF No. 169 at 16; Motion to Withdraw, ECF No. 46; Minute Entry, ECF No. 49; Order, ECF No. 50.)

*United States v. Gonzalez-Ramirez*, 561 F.3d 22, 30 (1st Cir. 2009) (quoting *United States v. LaBonte*, 520 U.S. 751, 761-62 (1997)). To suggest that the prosecutor would have charged the case differently but for the discussion with counsel is highly speculative.  Furthermore, despite Petitioner's unsupported contention that he would not have pled guilty had the maximum penalty been five years, Petitioner was not prejudiced.  Counsel ultimately persuaded the Probation Office, and subsequently the Court, that the statutory maximum of five years, rather than the ten-year double penalty, applied in this case.  Because Petitioner was not subject to the double penalty, Petitioner was not prejudiced. *See Strickland*, 466 U.S. at 697.

Petitioner also claims ineffective assistance of counsel because when he asked counsel (1) to file a motion to dismiss the section 2265A penalty before the plea, and (2) to attempt to obtain the pre-sentencing investigation report, also before the plea, counsel refused.  (Motion at 22, 24; Reply at 9-10.)  Although counsel did not make a substantive argument until the sentencing hearing that section 2265A did not apply, counsel clearly addressed the issue during plea negotiations, as the plea agreement states that the maximum term was ten years "if the enhanced penalty of [section 2265A] is found to apply, otherwise 5 years."  (Plea Agreement, ECF No. 120 at 2.)  Indeed, at the plea hearing, the Government represented that the parties reserved the issue for sentencing. (*Id.* at 7-8.)  The Court informed Petitioner that the maximum term would depend on whether the Court found that Petitioner was a recidivist or not; the Court then asked Petitioner if he understood, and Petitioner replied that he did.  (*Id.* at 8.)  Petitioner was thus aware, before he changed his plea, that the maximum period of incarceration could be five or ten years and that the issue would be addressed at sentencing.  Given that the issue was raised as planned in Petitioner's presence at sentencing, and given that Petitioner, upon the Court's inquiry, acknowledged at the plea hearing

that he understood that the issue would be determined at sentencing, Petitioner cannot now argue that his plea was involuntary or that he was otherwise prejudiced.

As to Petitioner's contention that counsel was deficient as the result of a failure to request a pre-plea presentence investigation report, the Government asserts that "pre-plea reports are sometimes prepared, but they are extremely rare in this district," and, in any event, the initial presentence investigation report had set the maximum penalty at ten years.  (Response, ECF No. 201 at 40.)  Regardless of whether such a report could have been conducted, given that the presentence report set the maximum penalty at ten years, the pre-plea investigative report would likely have identified a ten-year maximum and not a five-year maximum.  Based on Petitioner's primary contention (i.e., he pled guilty because he believed a ten-year maximum applied), Petitioner thus would have pled guilty even if a pre-plea report had been prepared.  Consequently, not only has Petitioner failed to assert a basis for a finding that counsel was deficient, but Petitioner has also failed to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[9]  *Strickland*, 466 U.S. at 694.

Petitioner's claim that his plea was involuntary because he did not understand whether the ten-year penalty would apply to him is procedurally defaulted, and he has failed to demonstrate ineffective assistance of counsel or a claim of actual innocence.  "It is a bedrock principle that, under ordinary circumstances, the voluntariness of a guilty plea can be questioned on collateral review under 28 U.S.C. § 2255 only if, and to the extent that, the plea has been challenged on

---

[9] Had Petitioner gone to trial and been convicted on Count I, the Court could have imposed a 60-month sentence without a variance from the sentencing guidelines range.  Following a trial, Petitioner's total offense level likely would have been 22 rather than the 19 that the Court found, due to a probable lack of any reduction for acceptance of responsibility.  A criminal history category of III, as provided in the revised presentence investigation report, combined with a total offense level of 22, would have yielded a guidelines range of 51-63 months on Count I alone, leaving aside the issue of what sentencing range may have applied to Count II.

direct appeal." *Oakes v. United States*, 400 F.3d 92, 95 (1st Cir. 2005) (citing *Bousley*, 523 U.S. at 621).

In sum, counsel appropriately argued that the prior state court convictions did not qualify as predicate crimes under section 2265A at sentencing, and counsel preserved the issue. (Sentencing Tr. at 45-46, 63.)[10]  In fact, the Court concluded that because the charging documents in the state cases reflected that the elements of the federal and state crimes differed, neither of the two state crimes qualified as predicate crimes under section 2265A, and thus the enhancement under section 2265A did not apply, which conclusion resulted in a maximum penalty of five years rather than ten.  (*Id.* at 66-69.)  Under the circumstances, Petitioner cannot maintain an ineffective assistance claim based on the timing of counsel's argument.

### 2.  Pretrial Investigation and Defense of Consent

Petitioner alleges that counsel failed to investigate (1) Petitioner's mental state (Motion, ECF No. 169 at 17); (2) the victim's friends' "threats to put [Petitioner] in jail at any cost" (Motion at 18; Reply, ECF No. 202 at 5-6); (3) the Government's shutdown of an internet account that contained exculpatory evidence (Motion at 18-19; Reply, at 4-5); and (4) a consent defense based on the victim's past sexual history, which, Petitioner alleges, included voluntarily and publicly sharing her name, address, and sexually explicit information on the Internet during and after her relationship with Petitioner (Motion at 18-20; Reply at 6-8).

For sound reasons, counsel is not required to question every witness or investigate every issue identified by a defendant.   Here, the evidence against Petitioner was overwhelming

---

[10] The Government represents that the initial presentence investigation report stated that the maximum penalty was a term of ten years, but in response to counsel's objection, the revised report stated that the maximum was five years. The Government disagreed with the revised report, arguing in its sentencing memorandum and at the sentencing hearing that Petitioner was subject to an enhanced penalty of ten years, pursuant to section 2265A, based on either of two prior state convictions.  (Government's Sentencing Memorandum, ECF No. 131 at 12-14; Sentencing Tr., ECF No. 150 at 19.)  One of the prior convictions was a 2007 conviction for stalking, and the other was a 2008 conviction for violation of a protection order.  (*Id.*)

(Prosecution Version, ECF No. 119 at 1-3), and Petitioner has offered no reasonable argument to suggest that the alleged shortcomings in the investigation contributed to Petitioner's decision to plead guilty.  For instance, the record lacks any evidence to suggest that the Government would call the victim's friends to testify at the trial.  Impeachment evidence, therefore, regarding the victim's friends was irrelevant.  Defense counsel is expected to make strategic decisions about whether or not to follow any particular lead and could not be faulted for failing to pursue impeachment evidence against persons who were not likely to be called as witnesses.  *See Phoenix*, 233 F.3d at 84.

In addition, the victim's past sexual history would not have been admissible under Fed. R. Evid. 412, which states that "evidence offered to prove that a victim engaged in other sexual behavior" is not admissible.  Rule 412(b)(1)(B) sets forth an exception for "evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor."  Rule 412(b)(1)(C) provides an exception for "evidence whose exclusion would violate the defendant's constitutional rights."  Neither of these exceptions applies.  The consent referred to in Rule 412(b)(1)(B) is the victim's consent to the conduct of which the defendant is accused, and Petitioner does not allege that the victim consented to his cyberstalking of her.  A challenge based on Rule 412 would have been futile, and counsel was not required to pursue it.  *See Hart*, 933 F.2d at 83.

### 3.  Timing of Plea Options and Counsel's Contact with Petitioner

Petitioner argues that counsel told him that he had only two days to decide whether to plead guilty or go to trial, and that if he did not plead guilty, the trial would be scheduled to start in two weeks.  (Motion, ECF No. 169 at 20.)   Petitioner alleges that counsel made no attempt to meet

with him to discuss strategy or exculpatory evidence and that there was a "nearly 5 month hiatus from contact with [Petitioner] after pretrial motions . . . ." (*Id.* at 20-21, 32.)

Petitioner more specifically contends that the hiatus in contact occurred from the time Petitioner filed the motion to suppress to the time the Court decided the motion. (Reply, ECF No. 202 at 8.) The activity in the case, as reflected in the Court docket, does not support Petitioner's contention,[11] nor does the record support the allegation of inadequate contact with counsel after the Court denied the motion to suppress. The Court denied the motion on June 13, 2012, and the subsequent docket entry reflects that the Court set the trial date for August 6, 2012. (Decision and Order, ECF No. 110.) In a motion to continue filed on July 12, 2012, counsel represented that he was "in the process of negotiating settlement of this matter with the government." (Motion, ECF No. 113 at 1.) Petitioner signed the plea agreement on August 2, 2012. (Plea Agreement, ECF No. 120 at 5.) The Court held the change of plea hearing on August 13, 2012. (Plea Tr., ECF No. 197 at 1.) The objective facts of record thus establish that counsel was in contact with Petitioner, and that Petitioner's argument to the contrary is without merit.

In addition, during the colloquy at the plea hearing, Petitioner told the Court that he had received a copy of the indictment, that he had had sufficient time to discuss the charges with counsel, and that he had discussed the charges and penalties with counsel. (Plea Tr., ECF No. 197 at 5.) The Court explained the cyberstalking charge in Count I, and Petitioner confirmed that he understood both the charge and the possible penalty, which included a prison term of up to ten

---

[11] Counsel filed the motion to suppress in January 2012. (Motion to Suppress, ECF No. 65.) The Court granted the Government's motion to extend time to file its response, and the response was due in mid-February 2012. (Order, ECF No. 71.) Meanwhile, in November 2011, Petitioner had filed a motion to reopen the detention hearing. (Motion to Re-open Detention Hearing, ECF No. 56.) In February 2012, counsel filed a motion to continue the detention hearing "to present a complete and adequate bail argument . . . ." (Motion to Continue, ECF No. 73 at 1.) In that motion, counsel represented that he had discussed Petitioner's Speedy Trial Act rights with him. (*Id.* at 2.) Counsel also filed a motion to dismiss Count I of the indictment. (Motion to Dismiss Count I, ECF No. 80.) In March 2012, counsel filed a reply in support of Petitioner's motion to suppress. (Reply, ECF No. 83.) The detention hearing was held in April 2012. (Minute Entry, ECF No. 95.)

years and supervised release of up to three years.  (*Id.* at 6-10.)  Petitioner also confirmed, in response to the Court's inquiry, that he had read the prosecution version and discussed it with counsel.  (*Id.* at 11.)  Counsel told the Court that Petitioner did not concede that he intended to injure the victim, and that Petitioner disputed a statement in the prosecution version regarding a hyperlink.  (*Id.* at 12.)  Petitioner represented to the Court that with the exception of those two disputes, the prosecution version was true to his personal knowledge.  (*Id.* at 13.)  Petitioner also stated that no one had threatened him in an effort to convince him to plead guilty, that he had read and understood the plea agreement before signing it, and that he signed the plea agreement voluntarily.  (*Id.* at 14-15.)

Based on this record, Petitioner's statements in the plea hearing are presumed to be truthful, and he has presented no evidence to rebut that presumption.  *See United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984) (noting that "the presumption of truthfulness of the [Fed. R. Crim. P.] 11 statements will not be overcome unless the allegations in the § 2255 motion are sufficient to state a claim of ineffective assistance of counsel and include credible, valid reasons why a departure from those earlier contradictory statements is now justified").  Petitioner's allegation that he did not have sufficient time to review the plea, consult with counsel, and consider the relevant facts is groundless.

### 4.  Sentencing Promises

Petitioner argues that before he pled guilty, counsel told him that "a plea could guarantee that [he] would not receive a harsh sentence" and that obtaining a three-point reduction for acceptance of responsibility "would secure a guideline sentence." (Motion, ECF No. 169 at 21.) Petitioner also alleges that counsel told him that if he entered a plea, "the sentence would be in the mid to low range of the guidelines," and that Petitioner would serve "no more than 10 months

federally," or 37-40 months, with 14 months of credit. (*Id.* at 23-24, 34.) Petitioner asserts that but for counsel's promises regarding the sentence, he would not have pled guilty. (*Id.* at 34.)

Petitioner's allegations lack credibility and are legally insufficient to support a claim of ineffective assistance of counsel. The Court explicitly advised Petitioner that the Court was not bound by the sentencing guidelines or any agreement between Petitioner and the Government regarding the sentence, and that the Court's sentence may be more severe or less severe than the guidelines range. (Plea Tr., ECF No. 197 at 15-17.) Petitioner did not object to or express any concerns about the process described by the Court. In fact, when the Court asked Petitioner whether anyone had made any promises to him to induce his plea, Petitioner responded that no one had made any promises to induce the plea, and he further represented that no one had made any promises regarding the Government's sentencing recommendation or the sentence imposed by the Court. (*Id.* at 17–18.) Petitioner's statements in the plea hearing are presumed to be truthful, and he has presented no evidence, other than his own allegations in the section 2255 motion, to rebut that presumption. *See Butt*, 731 F.2d at 80. His section 2255 allegations are not credible given his statements at the plea hearing. *See David*, 134 F.3d at 478. In addition, even if counsel had predicted the sentence inaccurately, an inaccurate prediction regarding a defendant's sentence does not constitute prejudice. *See United States v. LaBonte*, 70 F.3d 1396, 1413 (1st Cir. 1995) (holding that "[a]n attorney's inaccurate prediction of his client's probable sentence, standing alone, will not satisfy the prejudice prong of the ineffective assistance test"), *rev'd on other grounds*, 520 U.S. 751 (1997).

### 5. Factual Basis for Guilty Plea

Petitioner maintains that he told his counsel that the prosecution's representation that he had created "dozens" of internet profiles with variations of the victim's name as the profile name

"grossly expanded the conduct," and that there were just two profiles, not dozens of profiles. (Motion, ECF No. 169 at 26-27; Prosecution Version, ECF No. 119 at 2.)  Petitioner alleges that counsel told him this was a minor detail and advised him against raising it at the plea hearing. (Motion at 27.)  Petitioner argues that he would have contested the reference to "dozens" of Internet profiles.  (Motion at 27; Reply, ECF No. 202 at 11-13.)

At the plea hearing, Petitioner objected to other aspects of the prosecution version, but he did not object to the assertion that he had created dozens of profiles of the victim on the internet. Assuming that Petitioner could prove that counsel advised him not to object, counsel's performance was not deficient, and Petitioner has suffered no prejudice.  The actual number of profiles that he created was not an element of or otherwise essential to prove the charge.  The evidence of Petitioner's other activities, independent of the number of profiles that he created, was sufficient to establish guilt.  The pertinent activities included uploading to various pornographic websites videos accompanied by the victim's name and address, creating social networking accounts in which Petitioner posed as the victim, uploading photographs of the victim, creating links to the pornographic websites, and announcing that the victim was seeking a number of sexual activities.  (Prosecution Version, ECF No. 119 at 1-2.)[12]  In short, regardless of whether Petitioner created two profiles or dozens of profiles, the conduct to which he admitted supported the conviction.

---

[12] Furthermore, at sentencing, Petitioner did not object to the statement in the revised presentence investigation report that he had created "numerous" fake profiles of the victim.  (Sentencing Tr., ECF No. 150 at 4.)  Petitioner suffered no prejudice because the sentencing factors that led the Court to depart upward to the maximum statutory penalty applied not only to Petitioner's creation of the internet profiles (whether two profiles or dozens of profiles), but also to the other uses he made of the internet to injure and endanger the victim.  (*Id.* at 71-72.)

### 6.  Use of Cellmate's Testimony and Letter at Sentencing

At sentencing, the Government introduced testimony that Petitioner's cellmate offered during Petitioner's detention hearing, and a letter that the cellmate wrote and sent to law enforcement.  (Detention Tr., ECF No. 133; Sentencing Tr., ECF No. 150 at 28.)  The Government argued that although it would not request an obstruction enhancement at Petitioner's sentencing, the Government believed that the cellmate's testimony and letter were relevant to whether an upward departure in Petitioner's sentence was appropriate.  (Sentencing Tr. at 28-29.)

The cellmate had testified that he and Petitioner were incarcerated in the same cell in the Cumberland County Jail where the cellmate was serving a 48-hour sanction for failing a drug test while he was on supervised release following a federal conviction for obtaining drugs by deception.  (Detention Tr. at 3, 6, 13-14.)  The cellmate testified that he (the cellmate) had an extensive criminal history that included bank fraud and a drug offense in federal court and larceny and forgery in state court.  (*Id.* at 4, 17-20.)  In the letter, the cellmate wrote what Petitioner said he wanted to do to the victim.  (*Id.* at 7-8.)  The cellmate testified that Petitioner asked him if he knew anyone "who could take care of [the victim] as in females who could go do some physical damage to this girl . . . ." and "who can make her swim and not come out of the water?"  (*Id.* at 8, 12.)  The cellmate provided the letter to the Maine State Police with the hope that he would be cleared to obtain a Maine driver's license.  (*Id.* at 9-10.)

Petitioner argues that counsel told him that the Government would not introduce the testimony of Petitioner's cellmate at sentencing because the Government had endorsed Petitioner's acceptance of responsibility, and the cellmate was not credible.  (Motion, ECF No. 169 at 23.)  Petitioner claims ineffective assistance of counsel due to counsel's failure to address the issue at sentencing despite the Government's reference to it in the Government's sentencing memorandum

(*id.* at 28-29; Government's Sentencing Memorandum, ECF No. 131 at 23-25), and because counsel's efforts to cross-examine the cellmate were insufficient (Reply, ECF No. 202 at 16). Petitioner contends that he was prejudiced because the Court's upward variance was based in part on the cellmate's statements.  (Motion at 29, 32.)

Petitioner has offered no evidence or persuasive argument to suggest that the Court would have excluded the evidence if counsel had challenged the evidence.  In fact, the First Circuit rejected Petitioner's argument that this Court erred in considering the cellmate's statements, concluding that Petitioner had ample notice, before the sentencing hearing, that the Government would offer the statements, and "counsel had vigorously cross-examined the cellmate" at the detention hearing.  *Sayer*, 748 F.3d at 437-38.  The First Circuit also held that this Court "did not abuse its discretion in deeming the cellmate's testimony reliable and so relying on it at sentencing." *Id.* at 438.

The First Circuit's finding that counsel conducted a vigorous cross-examination of the cellmate also establishes that counsel was prepared for and attempted to address the cellmate's testimony.  Indeed, during the examination, the cellmate admitted to his long criminal history and his history of deception.  (Detention Hearing Tr. at 17-20.)  "'[T]he Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense.'"  *Moreno-Espada v. United States*, 666 F.3d 60, 65 (1st Cir. 2012) (quoting *Scarpa*, 38 F.3d at 8).  Petitioner asserts no facts that indicate a reasonable probability that more cross-examination would have yielded a different result.  *See Strickland*, 466 U.S. at 694.  In any event, Petitioner may not relitigate the issue in a collateral proceeding.  *See Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994) (noting that "[i]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion") (quotation marks omitted).

Petitioner also claims prosecutorial misconduct for the late inclusion in the Government's sentencing memorandum of information regarding Petitioner's cellmate.  (Motion at 28-29; Reply at 3-4.)  In Petitioner's direct appeal, the First Circuit held that the Government had provided Petitioner with sufficient notice of the cellmate's testimony through the Government's sentencing memorandum, which it filed several days before the sentencing hearing.  *See Sayer*, 748 F.3d at 437-38.  Petitioner may not relitigate this issue in this collateral proceeding.  *See Singleton*, 26 F.3d at 240.

### 7.  Mental Health Evaluation

Petitioner alleges that he asked counsel about obtaining a psychological evaluation for pre-trial and sentencing purposes to demonstrate that Petitioner had a mental illness after his consensual relationship with the victim ended.  (Motion, ECF No. 169 at 17, 25.)  Petitioner asserts that counsel told him that if they sought funds for an evaluation, "it may not cast [Petitioner] in a good light" and "it could result in a longer sentence if [Petitioner] received those funds from the Court."  (*Id.* at 25, 26.)  Petitioner contends that at one point, counsel told him that it would cost $1,500 to hire an expert, and at another point, counsel told him it would cost $3,000.  (*Id.* at 17, 24.)  Petitioner alleges that he was prejudiced by the lack of a mental health evaluation, in that the Court told him at sentencing, "I don't know whether it's a mental health issue, what it is."  (Reply, ECF No. 202 at 14; Sentencing Tr., ECF No. 150 at 74.)

Petitioner attaches a letter from counsel to Petitioner stating that a third person, who Petitioner identifies in his motion as Petitioner's brother, was not able to pay for a psychological evaluation.  (Letter, ECF No. 169-1; Motion at 25.)  Counsel's letter advised Petitioner against asking the Court for funding for the psychological evaluation because (1) the expert may reach a conclusion unfavorable to Petitioner, and (2) a request for Court funding may not be viewed

favorably at sentencing.  (Letter at 1.)  Counsel said he would rather fund the psychological evaluation privately, but counsel would ask the Court for funding if Petitioner wanted him to do so.  (*Id.*)

Petitioner apparently argues that counsel advised him against getting the psychological evaluation with Court funds in order to leave all possible funding available to pay counsel. (Motion at 26; Reply at 14.)  Petitioner suggests that counsel had a conflict of interest and induced Petitioner to plead guilty in order to dispose of the case expediently and defray counsel's costs. (Motion at 35; Reply at 14.)

The October 2012 letter from counsel to Petitioner (ECF No. 169-1) does not reflect or support the conclusion that counsel had a conflict of interest regarding funding for a psychological evaluation.  Rather, counsel simply shared his thoughts about the risks associated with requesting funds to conduct a psychological evaluation.  Despite the risks, counsel informed Petitioner that he would request the funds if Petitioner wished to proceed in that manner.  (*Id.* at 1.)  Counsel's conduct was reasonable and objectively cannot be viewed as deficient.

Furthermore, Petitioner has failed to demonstrate a reasonable probability that a psychological evaluation for pre-trial or sentencing purposes would have changed the outcome. The Supreme Court has held that if a defendant's mental condition "is seriously in question," he must have "access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense."  *Ake v. Oklahoma*, 470 U.S. 68, 82, 83 (1985).  Petitioner, however, has not presented any facts to suggest that his mental condition was seriously in question, and certainly no facts that would satisfy the requirements of the insanity defense statute, 18 U.S.C. §17.[13]  In addition, Petitioner has not demonstrated that if he had been

---

[13] The insanity defense statute, 18 U.S.C. §17, provides:

provided with an expert, he would not have pled guilty and would have gone to trial. *See Hill*, 474 U.S. at 59.

### 8.   Failure to Obtain State Prosecutor for Sentencing

Petitioner contends that counsel provided ineffective assistance because counsel did not notify this Court that the state prosecutor had failed to appear at Petitioner's federal sentencing. (Motion, ECF No. 169 at 27-28.)  Petitioner argues that the state prosecutor's absence prejudiced him because it deprived him of a possible downward departure under U.S.S.G. § 5K2.23.  (*Id.* at 28.)  Petitioner also alleges that he did not ask counsel to subpoena the state prosecutor, but rather, counsel told him that counsel had subpoenaed him.  (Reply, ECF No. 202 at 15.)[14]

Petitioner's ineffective assistance argument regarding the downward departure fails because counsel argued for a downward departure based on U.S.S.G. § 5K2.23, both in the sentencing memorandum and at the sentencing hearing.  (Petitioner's Sentencing Memorandum, ECF No. 130 at 7-9; Sentencing Tr., ECF No. 150 at 46-47.)  Counsel presented the testimony of Petitioner's state defense counsel, rather than the state prosecutor, at the sentencing hearing. (Sentencing Tr. at 5-6.)  Petitioner's state counsel testified that Petitioner was prosecuted in state

---

**(a) Affirmative defense.** It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

**(b) Burden of proof.** The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

---

[14] Petitioner additionally alleges that counsel may have received funds from Petitioner's brother to serve the subpoena, failed to follow through with the subpoena, but nevertheless kept the funds.  (Reply, ECF No. 202 at 16.)  This claim, to the extent Petitioner asserts it independently from his claim of ineffective assistance of counsel, is not cognizable under 28 U.S.C. § 2255 because any relief requested would be unrelated to Petitioner's sentence. *Cf. United States v. Chorney*, 453 F. App'x 4, 8 (1st Cir. 2011) (unpublished) (noting that section 2255 applies only to petitioners in custody claiming the right to be released; it does not apply to claims regarding restitution).

court for violation of conditions of release and for violation of a protection from abuse order, based in part on Petitioner's conduct while the victim was in Louisiana.  (Sentencing Tr. at 12.)

The decision to present the testimony of defense counsel rather than the prosecutor does not constitute deficient performance by counsel.  This Court concluded that it need not decide whether Petitioner had met the requirements for a downward departure pursuant to section 5K2.23, because "its reasons imposing a variant sentence at the statutory maximum also explain its refusal to depart downward." *Sayer*, 748 F.3d at 437.  Petitioner appealed the issue, and the First Circuit concluded that this Court had not abused its discretion.  *Id.*  That counsel did not succeed with an argument for a downward departure under section 5K2.23 does not render his performance deficient.  *See Moreno-Espada*, 666 F.3d at 65; *Scarpa*, 38 F.3d at 8.

## C.  Motion for Sentence Modification Under 18 U.S.C. § 3582(c)

Petitioner filed a motion to supplement his section 2255 petition with a request that is in substance a motion for a sentence modification pursuant to 18 U.S.C. § 3582(c).  (Motion to Supplement Section 2255 Motion, ECF No. 173.)   Petitioner's argument is based on an amendment to U.S.S.G. § 5G1.3.[15]  (*Id.* at 1-3.)  Petitioner argues that section 5G1.3 applies to

---

[15] Amendment 787 to the sentencing guidelines manual incorporated an amendment to section 5G1.3.  U.S.S.G. Supp. to App. C.   Section 5G1.3, as amended, is entitled "Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment or Anticipated State Term of Imprisonment."  U.S.S.G. § 5G1.3 (2014).  When Petitioner was sentenced in 2012, section, 5G1.3 provided in part:

(a)  If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b)  If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct), **and that was the basis for an increase in the offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments),** the sentence for the instant offense shall be imposed as follows:

him and should result in credit for an undischarged state term of imprisonment because that term was not otherwise credited. (Motion to Supplement, ECF No. 173 at 1-2.)[16]

This Court granted Petitioner's motion to supplement. The Government contends that the amendment to section 5G1.3 is not retroactive and therefore does not apply to Petitioner's sentence. (Response, ECF No. 201 at 53-54.)

Petitioner's criminal judgment was final before the amendment to section 5G1.3 became effective on November 1, 2014, and, therefore, the amendment is applicable only if it operates retroactively.[17] Section 1B1.10, entitled "Reduction in Term of Imprisonment as a Result of Amended Guideline Range," addresses the retroactivity of amendments to the sentencing guidelines. Section 1B1.10(a) provides in relevant part:

(a) Authority –

    (1) In General. -- In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (d) below, the court may reduce the defendant's term of

---

    (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

    (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

U.S.S.G. § 5G1.3 (emphasis added). Amendment 787, effective November 1, 2014, deleted the language that appears in bold print in section 5G1.3(b) above. In the commentary to Amendment 787, the section entitled "Reason for Amendment" states in part that the court imposes concurrent sentences "in any case in which the prior offense is relevant conduct under the provisions of §1B1.3(a)(1), (a)(2), or (a)(3), regardless of whether the conduct from the prior offense formed the basis for a Chapter Two or Chapter Three increase."

[16] Petitioner's argument pertains only to the time from May 20, 2011, to October 8, 2011, when he alleges, he was in federal custody but his state court sentence had not yet been discharged. (Motion to Supplement at 5-6.) Petitioner attaches an exhibit that appears to show that the Bureau of Prisons gave him jail credit from October 8, 2011, through December 3, 2012, and thus that Petitioner did not receive credit for the period from May 20, 2011, to October 8, 2011. (Attachment, ECF No. 173-1.)

[17] Because Petitioner did not file a petition in the United States Supreme Court for a writ of certiorari, his conviction became final 90 days after the First Circuit issued its judgment in Petitioner's direct appeal. *See Clay v. United States*, 537 U.S. 522, 525-26 (2003); Sup. Ct. R. 13(1). The First Circuit issued its judgment on May 2, 2014. *Sayer*, 748 F.3d at 425. Therefore, Petitioner's criminal judgment became final 90 days later, on July 31, 2014, which was before U.S.S.G. 5G1.3 went into effect.

imprisonment as provided by 18 U.S.C. §3582(c)(2).  As required by 18 U.S.C. §3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.

(2) <u>Exclusions</u>. – A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. § 3582(c)(2) if –

    (A) none of the amendments listed in subsection (d) is applicable to the defendant; or

    (B) an amendment listed in subsection (d) does not have the effect of lowering the defendant's applicable guideline range.

Amendment 787, which contains the amendment to section 5G1.3, is not one of the amendments listed in section 1B1.10(d).  Therefore, even if section 5G1.3 were otherwise applicable, it is not retroactively applicable to Petitioner's sentence.[18]

## III. CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases.  I recommend that the Court deny Petitioner's 28 U.S.C. § 2255 motion, and deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

I also recommend that the Court deny Petitioner's 18 U.S.C. § 3582 motion for a sentence reduction.

---

[18] Petitioner cites *United States v. Godin*, 522 F.3d 133 (1st Cir. 2008) (*Godin II*), in support of his argument.  *Godin II* was before the First Circuit on a petition for rehearing following a direct appeal and decision in *United States v. Godin*, 489 F.3d 431 (1st Cir. 2007) (*Godin I*).  In *Godin II*, the Court vacated the conviction and sentence in *Godin I* and remanded for resentencing on the basis of a non-retroactive sentencing guidelines amendment.  The Court held that the amendment "does not alter the guideline range applicable in this case; but in dealing with a sentence that has not become final, it might alter the district court's ultimate choice of a discretionary sentence in the post-[*United States v. Booker*, 543 U.S. 220 (2005)] era.  *Godin II*, 522 F.3d at 136 (alteration omitted).  The procedural posture of *Godin II*, in particular that final judgment had not yet been reached, distinguishes it from this case.  *See id.* at 135.

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 20th day of August, 2015.